IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DARRAH M. COLE                                                    PLAINTIFF

                    v.                    Civil No. 08-3036

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                   DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Darrah Cole, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability, disability insurance benefits (DIB), and supplemental security income ("SSI") pursuant to Titles II and XIV of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background:**

The plaintiff filed her applications for DIB and SSI on August 15, 2005, alleging an onset date of December 31, 1989, due to manic depression, anxiety, gastroesophageal reflux disorder ("GERD"), low potassium, alcoholism, and seizure disorder. (Tr.11, 58-59, 100-104). An administrative hearing was held on August 16, 2007. (Tr.515-544). At the hearing, plaintiff amended her onset date to August 18, 2005. (Tr. 530). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 40 years old and possessed a high school education, a Bachelor's Degree in criminology and sociology, and had completed two

AO72A
(Rev. 8/82)

years of law school before dropping out. (Tr. 60, 63, 517, 520). The record reveals that she had past relevant work experience ("PRW") as a cashier and receptionist. (Tr. 59, 97-100).

On February 6, 2008, the Administrative Law Judge ("ALJ") concluded that plaintiff's mood disorder and alcohol addiction were severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 13-14). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform a full range of work at all exertional levels, but was moderately limited with regard to making judgments on simple work-related decisions; understanding, remembering, and carrying out complex decisions; interacting appropriately with supervisors; and, responding appropriately to usual work situations and routine work changes. He then defined moderately limited as more than a slight limitation but still having the ability to perform satisfactorily in the particular area. With the assistance of a vocational expert, the ALJ then concluded that plaintiff could still perform work as an assembler, cashier II, and courier. (Tr. 20, 124-127).

The plaintiff appealed this decision to the Appeals Council, but her request for review was denied on May 18, 2008. (Tr.3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc.# 6, 8).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind

AO72A
(Rev. 8/82)

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

**Evidence Presented**:

Records from Baxter Regional Medical Center dated November 8, 1997, to December 20, 2005, indicate that plaintiff repeatedly received inpatient treatment for alcohol related problems.  Plaintiff was a binge drinker who reportedly abruptly stopped drinking several days

3

before hospital admission. She was first admitted by police on November 9, 1997, for acute alcohol intoxication (Tr. 373-380). She had taken Diazepam and Vicodin the previous day to treat her hang over. Then in February 1999, plaintiff was admitted for alcohol withdrawal syndrome. (Tr. 364-372). In March 1999, plaintiff was admitted for detoxification as per a Court order that she be placed in a 28-day rehabilitation program. (Tr. 354-362). At this time, she reported noncompliance with medications Xanax and Remeron, as well as a history of seizures during alcohol withdrawal. She was hospitalized in March 1999, June 2000, and August 2000 for alcohol intoxication and withdrawal. (Tr. 323, 334-337, 338-340). Then, in December 2000, plaintiff was admitted in an alcohol-related stupor and withdrawals. (Tr. 236-248). By August 2001, medical records show that plaintiff complained of abdominal pain and was diagnosed with alcoholic hepatitis. (Tr. 292-313). At this time, she was also evaluated for treatment at Ozark Counseling Services, but was later discharged due to her failure to maintain contact. (Tr. 427-435). In 2003, she was admitted on at least four occasions for alcohol-related seizure activity, alcoholic hepatitis, alcoholic bone marrow suppression, alcoholism, and chronic depression with severe panic attacks. (Tr. 228-235, 250-259, 261-272, 273-283). Plaintiff sought admission for alcohol detoxification on March 18, 2004. (Tr. 189-223). In June and July 2004, she was in jail and again in need of alcohol detoxification. (Tr. 156-166, 167-179, 249) In October and November 2004, plaintiff was out of Ativan and Lorazepam, and reporting nerve problems and nightmares. (Tr. 131, 132). Dr. William Coutts, II, diagnosed her with tachycardia, perimenopause, and anxiety. He prescribed Norvasc, Estrace, Ativan, and Prometrium. (Tr. 131).

In June 2005, plaintiff was again out of her medications. (Tr. 129). Plaintiff complained

4

of seizures, a cough, congestion, and hot flashes. Dr. Coutts diagnosed her with asthmatic bronchitis and prescribed Ativan, Bactrim, Tessalon Forte, Prometrium, and Estrace. (Tr. 129).

On September 15, 2005, plaintiff presented at the ER with complaints of chest pain. (Tr. 472). She stated that she had been out of Ativan for 3 days. Plaintiff had also been drinking whiskey for 3 days. An examination revealed a limited range of motion in her upper extremities. The doctor diagnosed her with tachycardia, hepatitis, and chest pain of questionable etiology. He prescribed Ativan, a regular diet, and advised plaintiff to stop drinking. (Tr. 472).

On December 1, 2005, plaintiff underwent a general physical examination. (Tr. 381-388). She complained of seizures and panic attacks. However, plaintiff had not undergone a neurological consultation. She stated that she was three months from graduation from law school when she married her first husband and dropped out of school. At this point, she became an alcoholic. The examination revealed a normal range of motion in all areas, 100% grip strength, and no evidence of psychosis. She was oriented to time, person, and place. The doctor diagnosed plaintiff with alcohol abuse, nicotine addiction, questionable seizure disorder, and questionable panic attacks. He concluded that she had no limitations with regard to seeing, hearing, sitting, standing, or walking. (Tr. 381-388).

On December 20, 2005, plaintiff was again in jail and complained of seizures. (Tr. 134-144, 487-498). She reported two episodes of tonic seizures, each lasting a few minutes and followed by one of hour of confusion. Plaintiff stated that she had been drinking 1 pint of hard liquor per day with her last drink having been 3 days prior. She also indicated that she was suppose to be taking Lorazepam, but was out of medication. Plaintiff was given a dose of Dilantin in the emergency room and admitted for observation. No seizures were noted and the

AO72A
(Rev. 8/82)

doctor concluded they were most likely due to alcohol withdrawal or the result of her not taking the Lorazepam.  Tests also revealed thrombocytopenia likely secondary to alcohol abuse and slightly elevated liver enzymes secondary to alcohol abuse.  Plaintiff was given a prescription for Lorazepam and told to follow-up with Ozark Counseling Services regarding alcohol abuse. (Tr. 134-144, 487-498).

On May 18, 2006, plaintiff underwent a neuropsychological evaluation with Dr. Vann Smith.  (Tr. 462-469).  Based on an interview of plaintiff and neuropsychological testing, he determined that plaintiff's responses were consistent with the presence of impaired brain function of moderate severity.  The pattern of abnormal findings reflected impairment of those neurocognitive functions subserved by the frontal, prefrontal, and frontotemporal cerebral architecture of the brain.  This pattern was similar to that seen commonly in association with seizure disorder, traumatic brain insult, and the sequelae there of (post concussive syndrome) and the dysregulation of key central neurochemistry (Serotonin, Norepinepherine, Acetylcholine, and GABA) believed now to be precipitated by the brain and spinal cord's adaptive response to a chronically painful disease process (e.g., DDD, DJD, fibromyalgia, syringomelia, SLE, MS, and peripheral neuropathy). Dr. Smith stated that plaintiff's resulting neurocognitive symptoms interfered with the plaintiff's ability to carry out routine daily activities in a consistent manner, rendering her disabled.  He then diagnosed plaintiff with cognitive dysfunction secondary to multiple brain injuries (by report), seizure disorder (by report), and chronic, multifocal pain disorder (by report).  Dr. Smith assessed plaintiff with a GAF of 45 and a fair prognosis.  Dr. Smith also completed a mental RFC assessment.  He found that plaintiff was unable to meet competitive standards in the following areas: remember work-like procedures maintain attention

6

for 2 hour segments; maintain regular attendance and be punctual within customarily strict tolerances, sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruption from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods; understand, remember, and carry out detailed instructions; set realistic goals or make plans independently of others; and, deal with the stress of semiskilled and skilled work.  Dr. Smith also concluded that plaintiff was seriously limited but no precluded from geeting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine setting, dealing with normal work stress, being aware of normal hazards and taking appropriate precautions, traveling in unfamiliar places, and using public transportation. He indicated that plaintiff's symptoms would cause her to miss more than 4 days of work per week and were expected to last 12 months.  (Tr. 462-469).

On June 6, 2006, plaintiff complained of gastroesophageal reflux ("GERD"), nausea, vomiting, fever, chills, decreased appetite, joint pain, seizure disorder, and alcoholism. (Tr. 499-502).  She stated that she had experienced a seizure that morning, and her GERD was worse. Knowing she was an alcoholic, her boyfriend reportedly bought her a pint of whiskey and gave her a shot to help ease her stomach discomfort.  An examination revealed abnormal breath sounds, wheezing, and tachycardia.  Dr. Coutts diagnosed her with chronic GERD, gastritis, anxiety, and alcohol dependence with episodic drinking behavior.  He then prescribed Ativan, Protonix, and administered injections of Pepcid and Phenergan.  (Tr. 499-502).

On June 27, 2006, plaintiff indicated that the Protonix samples Dr. Coutts have given her helped immensely.  (Tr. 503-505).  The nausea and vomiting were gone, her last seizure was 2

7

weeks prior, and her last drink was June 5. She asked Dr. Coutts to increase her Ativan dosage, however, he preferred to address her problems during the night with an alternate medication. Given her educational background, Dr. Coutts asked plaintiff if she could work as a paralegal. She stated that she did not know if she had the mental ability to do so after so many years of drinking. Dr. Courtts thought she was underestimating her abilities and should reconsider getting a job as opposed to seeking disability. He reported a normal physical examination and diagnosed her with reflux, nausea, vomiting, depression, manic depression, anxiety disorder not otherwise specified, nocturnal anxiety, poor sleep, seizure disorder, and alcoholism. Dr. Coutts then prescribed Protonix, Doxepin, and Ativan. (Tr. 503-505).

On November 17, 2006, plaintiff underwent a mental status evaluation with Dr. Adam Brazas. (Tr. 389-396). Plaintiff complained of more frequent and severe seizures, panic attacks while standing in line at Wal-mart, and depression. She stated that she quit law school 3 months prior to graduation and began using alcohol to cope. Plaintiff reported no inpatient psychological treatment, but did state that she had been in alcohol rehabilitation several times. She had been drinking ½ gallon of whiskey per day but had reportedly decreased this to ½ to 1 pint three times per week. Dr. Brazas noted that she was cooperative, appeared relaxed, had good eye contact, and a normal affect. He found no evidence of unusual or noteworthy behaviors other than her virtual nonstop speech. Further plaintiff denied delusions, hallucinations, and paranoia. She did, however, report nightmares of robbing banks, getting drunk, getting behind the wheel, and ending up killing someone. Plaintiff indicated that these nightmares typically occurred after watching CSI. Dr. Brazas could find no obvious indication of organic involvement. Therefore, he diagnosed her with alcohol dependence, panic disorder with agoraphobia, personality disorder

8

not otherwise specified, and seizure disorder.   Dr. Brazas also assessed her with a global assessment of functioning score of 50.   He noted no limitations with regard to concentration, persistence, or pace.   (Tr. 389-396).

**Discussion**:

We first address the ALJ's assessment of plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  *Id*.  As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting her determination that plaintiff's complaints were not fully credible.  The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

The record does reflect that plaintiff was treated for reported seizure activity on several occasions.  However, plaintiff was also an alcoholic.  She repeatedly admitted to binge drinking.

9

The records indicate that each time plaintiff was treated for a seizure, she had either abruptly stopped drinking after drinking heavily for a long period, or had been drinking. Many of the doctors treating plaintiff diagnosed her with alcohol related seizures. In fact, plaintiff was never referred to, nor did she seek to be evaluated by a neurologist. Plaintiff also testified that her seizures responded to Lorazepam. *See Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). As we can find no evidence in the record to indicate that plaintiff's seizures were true seizures and not related to her alcoholism and they do seem to be responsive to medication, we can not say that plaintiff's seizure activity, standing alone, is severe. A mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis. *See Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990).

As previously noted, plaintiff has also been diagnosed with alcoholism, alcohol withdrawal, and other alcohol related illnesses (alcoholic hepatitis, low potassium, etc.) on numerous occasions. Records indicate that she was arrested and charged with driving while intoxicated at least twice, and was voluntarily and involuntarily admitted to alcohol detoxification programs many times. While we do consider plaintiff's alcoholism and alcohol related illnesses to be severe, an individual can not be considered to be disabled if alcoholism or drug addiction is a contributing factor material to the determination of disability. *See* 42 U.S.C. § 423(d)(2)(C). Therefore, plaintiff's alcoholism is not a grounds for disability.

Plaintiff has also been diagnosed with depression, anxiety, and bipolar disorder. However, she did not seek consistent treatment for these impairments and did not take her medication as prescribed. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of

10

AO72A
(Rev. 8/82)

claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments). Records indicate that plaintiff ran out of medication on numerous occasions and self medicated with alcohol. Plaintiff stated that these impairments did not prevent her from working, as long as she was taking her medication (Tr. 529). *See Patrick*, 323 F.3d at 596 (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). Therefore, although severe, we can not say that plaintiff's depression, manic depression, or anxiety were disabling.

Plaintiff contends that her financial situation should excuse her failure to seek additional treatment and continue her medication, but we do not agree. It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem." *Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir.1995). The record makes clear, however, that plaintiff was receiving both medication and treatment through he emergency room and her treating doctor. She was never turned down for medical treatment. Further, in spite of her alleged inability to afford treatment and medication, plaintiff also continued to smoke cigarettes and drink alcohol. As such, her failure to seek mental health treatment, seek consistent or continue taking her prescription medication is not excused. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted).

11

Plaintiff was also treated for GERD.  While we note that this impairment is painful and annoying, we can find no evidence in the record to show that this impairment prevented plaintiff from performing work-related activities.  We also note that her GERD was responsive to medication.  *See Patrick*, 323 F.3d at 596 (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling).

Plaintiff's own reports concerning her activities of daily living also contradict her claim of disability.  On paperwork submitted to her attorney, plaintiff indicated that she cooks, washes dishes, does laundry, makes the beds, watches children, watches TV, listens to the radio, reads, talks on the phone, and grooms herself daily.  (Tr. 110). She also reported the ability to clean house, dust, vacuum, grocery shop, pay bills, visit friends, talk to neighbors, and exercise weekly, and drive, fix things, sleep, participate in organizations, go to church, perform volunteer activities, perform hobbies, and visit relative monthly.  (Tr. 110).  Plaintiff also told Dr. Brazas that she could shop for groceries and clothing in spite of her agoraphobia.  (Tr. 389-396). Further, she stated that she and her boyfriend were living with an elderly friend, caring for him, and helping out around the house.  (Tr. 448-449).  Plaintiff indicated that she could perform all household chores except chopping wood.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone,

12

drive, grocery shop, and perform housework with some help from a neighbor).  Clearly, this level of activity is inconsistent with a finding of disability.

Therefore, although it is clear that plaintiff suffers from some degree of pain and discomfort, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).  Neither the medical evidence nor the reports concerning her daily activities supports plaintiff's contention of total disability.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

While we note plaintiff's fiancé, James Bradley, testified on her behalf, we do not find his testimony to be particularly persuasive.  His testimony really did not add anything to the plaintiff's testimony.  Further, as plaintiff's fiancé, Mr. Bradley had a financial interest in the outcome of the cases.  *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Plaintiff also contends that the ALJ erred in finding that she maintained the RFC to perform a full range of work at all exertional levels with only mental limitations.  It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).  The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448,

AO72A
(Rev. 8/82)

451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.154599(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs*., 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, plaintiff's subjective complaints, and her medical records. On December 14, 2005, Dr. R. W. Beard, a non-examining consultative doctor, completed a physical RFC assessment. (Tr. 412-417). After reviewing plaintiff's medical records, he concluded plaintiff's physical impairments were non-severe. This opinion was reaffirmed on February 9, 2006. (Tr. 412-417).

On February 10, 2006, Dr. Brad Williams, a non-examining medical consultant completed a psychological review technique form and a mental RFC assessment. (Tr. 397-411). After reviewing her medical records, he diagnosed her with anxiety, a personality disorder, and substance abuse. Dr. Williams noted mild restrictions in plaintiff's activities of daily living and moderate limitations in her social functioning and maintaining concentration, persistence, and pace. He also found that plaintiff had moderate limitations in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods;

14

making simple work-related decisions; completing a normal workday and work week without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; setting realistic goals; and, making plans independently of others. Dr. Williams then concluded that plaintiff could perform work where the interpersonal contact is incidental to the work performed, the complexity of the tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct, and concrete. (Tr. 397-411).

After reviewing the entire record, we can find no evidence to indicate that plaintiff voiced consistent complaints of exertional impairment. Although plaintiff contends that her seizure disorder rendered her disabled, we note nothing in the record to indicate that these seizures left her with residual impairment. Further, all of her seizures were related to alcohol use or withdrawal. There is no objective medical evidence to indicate that plaintiff has a true seizure disorder independent of her alcoholism.

Similarly, there is no evidence to indicate that plaintiff's alcoholic hepatitis or other alcohol related illnesses were of such severity as to impact her physical abilities. No doctor restricted plaintiff's physical activities at any time during the relevant time period.

Plaintiff contends that she sustained knee, ankle, and foot injuries that also impacted her ability to perform work-related activities. These injuries were sustained prior to the relevant time period, and there is no indication that these injuries resulted in permanent impairments. In fact, plaintiff voiced no complaints regarding these injuries during the relevant time period. As such, we find no evidence to indicate that plaintiff's exertional abilities were limited in any way by any

15

of her impairments.  Accordingly, we find substantial evidence supports the ALJ's determination that plaintiff can perform a full range of work at all exertional levels.

Mentally, we also find substantial evidence to support the ALJ's conclusion that plaintiff suffered from moderately limited with regard to making judgments on simple work-related decisions; understanding, remembering, and carrying out complex decisions; interacting appropriately with supervisors; and, responding appropriately to usual work situations and routine work changes.  While we note Dr. Smith's evaluation and RFC assessment, we agree that it is not entitled to significant weight.  Dr. Smith's opinion was rendered after assessing plaintiff on only one occasion.   It is also inconsistent with the remaining medical evidence of record, including Dr. Brazas's assessment and plaintiff's own admission that her mental impairments were amenable to treatment.[1]   *See Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (noting that if a doctor's opinion is "inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight").  Plaintiff's treating doctor, Dr. Coutts, even stated that plaintiff was underestimating her own abilities and should pursue employment, perhaps as a paralegal,  rather than disability.  Therefore, we believe that the ALJ's RFC assessment will stand.

We also find that substantial evidence supports the ALJ's finding that plaintiff can still perform work that exists in significant numbers in the national economy.  When presented with a hypothetical by the ALJ involving a claimant of the same age, educational and vocational

---

[1]While plaintiff contends that the ALJ was biased toward Dr. Smith, we find no such bias.  The ALJ merely points out the inconsistencies within Dr. Smith's assessment and the inconsistencies between Dr. Smith's assessment and the other medical evidence of record. Therefore, we do not find the ALJ to have been biased against Dr. Smith.

16

background as plaintiff, with the RFC assessment previously noted, the vocational expert stated that the individual would still be able to perform work as an assembler, cashier II, and courier. (Tr. 124-127).  *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).  Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

**Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 25th day of September 2009

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

17